METROBANC, Federal Savings Bank, a Federally Chartered Stock Savings Bank, and Comerica, Incorporated, a Delaware Corporation, Plaintiffs,

v.

FEDERAL HOME LOAN BANK BOARD, an Agency of the United States, and the Federal Savings and Loan Insurance Corporation, an Agency of the United States, Defendants.

Civ. No. 87 72128.

United States District Court,
E.D. Michigan, S.D.

Aug. 17, 1987.

Gregory L. Curtner, Detroit, Mich., Constance S. Huttner, New York City, for plaintiffs.

John B. Beaty, Howard L. Feinstein, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

ANNA DIGGS TAYLOR, District Judge.

The present action was instituted by Plaintiffs to challenge enforcement of the application and review requirements promulgated by Defendants at 12 C.F.R. § 563.-22(b) against Plaintiff MetroBanc, Federal Savings Bank's ("MetroBanc") proposed charter conversion and subsequent merger with Plaintiff Comerica, Incorporated ("Comerica"). This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331; 28 U.S.C. §§ 2201 and 2202; 5 U.S.C. §§ 553 and 706; Section 5(i)(3) of the Home Owners' Loan Act of 1933, 12 U.S.C. § 1464(i)(3); and Section 407(a) of the National Housing Act, 12 U.S.C. § 1730(a). A hearing on Plaintiffs' motion for a preliminary injunction was held on July 2, 1987. This memorandum memorializes the Court's findings of fact and conclusions of law, which were outlined on the record at the conclusion of the hearing.

In May of 1983, the Federal Home Loan Bank Board ("Bank Board"), a Defendant herein, amended 12 C.F.R. §§ 563.22 and 571.5 of the Rules and Regulations of FSLIC-Insured Institutions concerning the transfer of assets and liabilities by such institutions.

In late August of 1986, Plaintiffs MetroBanc and Comerica executed and publicly announced an Agreement and Plan of Reorganization, whereby MetroBanc would convert from a federally-chartered stock savings and loan institution to a Michigan state-chartered savings and loan association. Then, MetroBanc would leave the FSLIC system by converting its charter to that of a national banking association, to be insured by the FDIC, with the purpose of merging into Comerica Bank-Grand Rapids. The intermediate chartered entity would be denominated "MetroBanc Interim."

At approximately the same time as the MetroBanc-Comerica announcement, the Bank Board's Office of General Counsel ("OGC") wrote a letter advising another banking institution that the proposed charter conversion and subsequent merger plan of that bank constituted a "transfer of assets and liabilities" subject to the application and review procedures of 12 C.F.R. § 563.22(b). *See* Letter from Harry W. Quillan to Thomas P. Vartanian, Attorney for Westchester Federal Savings Bank (August 29, 1986).

Later, on October 7, 1986, the Bank Board issued in the *Federal Register* what it has designated as an interpretive rule "notifying all insured institutions that transfers by operation of law [were] also subject to the provisions of its transfer of assets regulations." 51 Fed.Reg. 36529 (October 10, 1986). The Bank Board also explicitly adopted the OGC opinion regarding the scope of § 563.22(b).

Because it was aware of published reports of the forthcoming MetroBanc-Comerica transaction, the Bank Board's OGC wrote to MetroBanc, in a letter dated October 14, 1986, specifically notifying MetroBanc of the application requirement imposed by 12 C.F.R. § 563.22(b). *See* Letter from Julie L. Williams to Robert H. Becker. Nevertheless, MetroBanc has not yet filed the required application. Instead, on June 5, 1987, after receiving approval of the merger from the Federal Reserve Board, MetroBanc and Comerica, Plaintiffs herein, have filed this lawsuit for declaratory and injunctive relief, challenging the Bank Board's adoption of the interpretive rule.

Three days after filing the complaint, on June 8, 1987, Plaintiffs filed this motion for a preliminary injunction against the Bank Board's enforcement of the rule against MetroBanc. Plaintiffs allege that the rule adopted by the Bank Board on October 7, 1986 exceeds the statutory authority and jurisdiction of the Bank Board, that it is

arbitrary and capricious, and that it was adopted in violation of the notice and comment requirements of the Administrative Procedures Act ("APA").

To obtain a preliminary injunction in the Sixth Circuit, the Plaintiffs, MetroBanc and Comerica, must meet the following 4 prerequisites by demonstrating:

(1) a substantial likelihood of success on the merits;

(2) a strong or substantial likelihood of irreparable harm or injury occurring to the movants absent injunctive relief;

(3) that the threatened injury to Plaintiffs outweighs the harm which might be sustained by the Bank Board and FSLIC if the injunction were entered; and

(4) that the issuance of the injunction will serve the public interest.

*In re DeLorean Motor Co.,* 755 F.2d 1223, 1228 (6th Cir.1985); *Friendship Materials, Inc. v. Michigan Buick, Inc.,* 679 F.2d 100, 102 (6th Cir.1982).

■ A specific finding of irreparable injury to the movants is the single most important prerequisite that the Court must examine when ruling upon a motion for a preliminary injunction. *Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *Warner v. Central Trust Co., N.A.,* 715 F.2d 1121 (6th Cir. 1983); 11 Wright & Miller, Federal Practice and Procedure § 2948 (1986 Supp.) at 431. The absence of irreparable injury must end this Court's inquiry. *Aluminum Workers Int'l Union v. Consolidated Aluminum Corp.,* 696 F.2d 437, 444 (6th Cir.1982); *Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union,* 471 F.2d 872, 876 (6th Cir.1972).

Applying the foregoing rules of law to the case at bar, the Court finds that Plaintiffs have failed to demonstrate an irreparable injury which would warrant the extraordinary relief they have requested.

In the first instance, Plaintiffs argue that since the rule adopted by the Bank Board was enjoined by a district court in another merger transaction, *see United First Federal Savings and Loan Association v. Federal Home Loan Bank Board,* No. 86–661–CIV–5–16 (Nov. 4, 1986 M.D. Fla.), this Court should adopt that court's findings of irreparable injury and similarly enjoin enforcement of the rule with respect to the MetroBanc-Comerica transaction.

This Court finds that the *United First Federal* decision is completely distinguishable from the instant case. In that case, the irreparable harm largely relied upon by the district judge was the potential adverse effects to shareholders and others of application of this rule in view of the imminent effective date of the Tax Reform Act of 1986. The tax ramifications of the merger made time of the essence and the requirement of Bank Board approval threatened to delay, and likely destroy, the transaction.

The tax consequences of the MetroBanc-Comerica merger are not at issue, nor are there any other equally unmeasurable effects claimed which cannot be calculated in numbers at a later date. Plaintiffs do not seriously suggest that this merger would be destroyed by compliance with the rule, although its expense may be substantially enhanced. Accordingly, the *United First Federal* case is inapposite here.

■ Plaintiffs also argue that the very requirement of compliance with an unconstitutional statute or regulation constitutes irreparable harm *per se.* The Court cannot agree. The simple claim that a rule is unconstitutional is insufficient to demonstrate irreparable harm absent a showing of an imminent concrete and irreparable injury. *Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *Hale v. Dept. of Energy,* 806 F.2d 910 (9th Cir. 1986). Plaintiffs have made no such showing.

The injuries described by Plaintiffs' counsel at oral argument are all readily amenable to remedy at the conclusion of this lawsuit through monetary awards. Moreover, Plaintiffs' very failure to comply with the application and review procedures, as required by the Bank Board rule, has deprived the Court of the opportunity to observe what might be the Bank Board's precise position regarding the proposed MetroBanc-Comerica transaction, whether an

exit fee is charged or what other prerequisites are placed on its approval, and to calculate the damages which Plaintiffs might sustain in attempting to comply with the Board's requirements.

■ Plaintiffs assert that the burden and expense of complying with the rule are so onerous that irreparable damage is inevitable. Contrary to Plaintiffs' assertion, the inconvenience and expense incident to an application process does not constitute an irreparable harm warranting issuance of a preliminary injunction. The potential for administrative expense, without more, does not satisfy the prerequisite of irreparable injury. *Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1974); *Friendship Materials, Inc. v. Michigan Brick, Inc., supra; Downstate Stone Co. v. U.S.,* 651 F.2d 1234 (7th Cir.1981). Such expense is not devastating to the business plan of the parties, and as aforestated, the failure to file an application has prevented the Court from knowing what other expenses might be imposed.

■ Plaintiffs claim irreparable injury is demonstrated by the possibility that a defense of sovereign immunity by Defendants might frustrate recovery of monetary damages at the conclusion, in due course, of a lawsuit against them. The sovereign immunity of the United States Government has not irreparably injured Plaintiffs. If Plaintiffs had consummated the Metro-Banc-Comerica merger without prior Bank Board approval, and subsequently were subjected to enforcement proceedings, Plaintiffs certainly would not be prevented from fully litigating their position to the highest court.

■ Plaintiffs also allege that the loss of time necessary for the Bank Board's review of the MetroBanc charter conversion will cause a substantial delay in consummating the merger with Comerica, because the August 4, 1987 expiration date of the Federal Reserve Board's approval and the August 31, 1987 date for optional termination of the merger agreement by either party will make the transaction impossible thereafter. This problem has been created, however, by Plaintiffs themselves. The possibility that administrative review of the MetroBanc-Comerica transaction may extend beyond those two deadlines is largely due to Plaintiffs' choice of doing nothing until the filing of this lawsuit almost a year after full notice of the Board's requirement. Indeed, in January of 1987, the filing of an application was discussed by Plaintiffs' agents with the Bank Board. As previously noted by the Court, Plaintiffs were specifically notified, in a letter dated October 14, 1986, that the application requirements of 12 C.F.R. § 563.22(b) would be applied to the MetroBanc-Comerica transaction. Where, as here, the potential delay complained of is totally the result of Plaintiffs' decision not to submit an application as requested, there is a failure to demonstrate irreparable damage sufficient to warrant this extraordinary relief. *See Sims Varner & Assoc. v. Blanchard,* 794 F.2d 1123 (6th Cir.1986).

Even if MetroBanc and Comerica were without fault in causing this possibility of delay, preliminary injunctive relief would not be appropriate. A serious and direct injury to the movants themselves does not exist at this time. Notwithstanding the August 4 and the August 31 deadlines now facing Plaintiffs, irreparable injury is not evident from the set of facts presented to this Court such that equitable relief must be given to the Plaintiffs. There is no evidence that adequate compensatory or other corrective relief is not available either through this litigation or in enforcement proceedings. *See Sampson v Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1974), *quoting Virginia Petroleum Jobbers Ass'n v. F.P.C.,* 259 F.2d 921 (D.C.Cir.1958).

■ Plaintiffs' claim of potential loss of business opportunities to shareholders of MetroBanc and Comerica also fails to demonstrate truly irreparable injury. To the extent that there is such a possibility, it is noted that those shareholders are not parties to this litigation.

■ The possibility that the Bank Board may disapprove the application or may impose onerous economic penalties in the

form of exit fees, which Plaintiffs allege would be exorbitant, is entirely a speculative proposition and is, once again, an insufficient basis for the entry of injunctive relief. Neither of these possibilities have occurred at this point. Furthermore, the requirement of exit fees and the amount of the fee assessed by Defendants are issues neither presently before the Court, nor irreparable in effect.

■ Finally, Plaintiffs claim that denial of their procedural rights under the Administrative Procedures Act to a notice and comment period on the Bank Board rule constitutes irreparable harm. The Court does not find that any irreparable injury was sustained by the deprivation of the opportunity to comment on the rule. The rule was simply a promulgation of agency policy that charter conversions and merger transactions were subject to the application and review procedures of 12 C.F.R. § 563.-22(b). Absent promulgation of the interpretive rule, this policy nevertheless would be applicable, as the General Counsel had notified others in a similar position prior to the promulgation.

Even if the prerequisite of irreparable injury had been demonstrated, it does not appear to the Court that Plaintiffs have demonstrated a likelihood of success on the merits in this litigation.

■ Plaintiffs claim that the rule's requirement of Bank Board approval of a federal-to-state charter conversion and subsequent merger violates Section 5(i)(3) of the Homeowners Loan Act, 12 U.S.C. § 1464(i)(3). Judicial deference, however, must be given to the agency's permissible construction of its own authorizing statute. *Chevron USA v. National Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 2794 n. 11, 81 L.Ed.2d 694 (1984). This Court is not, on the preliminary motion and without having before it an agency response to an actual application, going to make a finding that the Bank Board's future disposition of an application, if submitted, would be beyond the authority of its own authorizing statutes. Thus far, the statements and announcements which Defendants have made are clearly permissible

and reasonable constructions of authorizing statutes. The Court would not declare the statutes themselves invalid on this motion for preliminary injunction, even if it perceived a possible infirmity, which it does not. *South Georgia Nat'l Gas Co. v. F.E.R.C.,* 699 F.2d 1088 (11th Cir.1983).

■ The Court finds no arbitrariness or capriciousness in the Bank Board's promulgation of the interpretive rule. *See Motor Vehicles Mfrs Ass'n v. State Farm Mut. Autom. Ins. Co.,* 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). As defense counsel has argued, the rule has a rational basis; it is consistent with the interpretations of the Bank Board's Office of General Counsel regarding statutory requirements for charter conversions. Moreover, the rule and the Bank Board's position are rationally related to an effort to meet the current condition of the thrift industry. *Orleans Audubon Society v. Lee,* 742 F.2d 901, *reh. denied,* 750 F.2d 69 (5th Cir.1984); *McHenry v. Bond,* 668 F.2d 1185 (11th Cir.1982). Therefore, the Court will not make a finding that there is a preliminary showing of arbitrariness or capriciousness.

One of the three stated goals of 12 C.F.R. § 563.22(b), as expressed by the Board in promulgating that regulation, are the protection of accountholders who would be adversely affected by the transfer of accounts to institutions not protected by Bank Board regulations. The rule adopted by the Bank Board expresses an identical goal: the protection of institutional accountholders by ensuring that inter-institutional transfers of assets are consummated in compliance with all applicable laws and rules. The rule was the product of reasonable agency decision-making. It does not appear to be a departure from past practice or past general counsel's interpretation, or inconsistent with the original intent of the regulation.

■ Plaintiffs also contend that the rule was adopted in violation of the procedural requirements of the Administrative Procedures Act, in that no opportunity for notice and comment was provided. The Bank Board has responded that this is an interpretive rule which clarifies or explains

a preexisting statute or regulatory provision. The Court finds that, at least on a preliminary examination, the agency's argument is persuasive. The rule does clarify the preexisting regulation; it is intended to be an interpretation by the agency promulgating the rule. Since the rule itself imposes no new substantive duties on those subject to the agency's jurisdiction, a notice and comment period was not required. *See Chamber of Commerce of U.S. v. O.S. H.A.*, 636 F.2d 464 (D.C.Cir.1980).

■ Finally, the Court finds that entry of preliminary injunctive relief would cause very substantial harm to the Defendants and would not serve the public interest.

Plaintiffs argue that the FSLIC system has survived since its inception without the protection that the new rule purports to provide, and that there is no evidence that FSLIC or MetroBanc depositors would be injured absent the rule. It does appear to this Court, however, that the Defendants would be substantially harmed if the Court were to enjoin, at this point, the enforcement of this interpretive rule against MetroBanc. The Bank Board's actions are an attempt to maintain the integrity of FSLIC and of the thrift industry through a very difficult period. For this Court to act in haste against these reasonable efforts would be extremely detrimental to public confidence in the thrift system. The Bank Board is charged with the task of preserving and maintaining the health of the savings and loan industry. For the Court to enjoin on preliminary examination this rational measure, even if eventually it should turn out to have some infirmity, would be extremely detrimental to the public interest, to the thrift system, and to Defendants who are responsible for protection of the depositors in that system.

For the foregoing reasons, IT IS ORDERED that Plaintiffs' motion for preliminary injunction must be and hereby is DENIED.

IT IS SO ORDERED.